**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 10 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AV BUILDER CORP., a California
corporation; et al.,

Plaintiffs-Appellants,

v.

HOUSTON CASUALTY COMPANY, a
Texas corporation,

Defendant-Appellee.

No.    22-55445

D.C. No.
3:20-cv-01679-W-KSC

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Submitted October 4, 2023[**]
Pasadena, California

Before:  BYBEE, BENNETT, and DESAI, Circuit Judges.

This is an insurance coverage suit arising out of an underlying sexual

harassment lawsuit filed against Plaintiffs AV Builder Corp., RestorCorp, and

Antonio Madureira by Laura Dusina, a former employee of RestorCorp and ex-

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

girlfriend of Madureira.[1]  Plaintiffs had employment practices liability insurance through Defendant Houston Casualty Company ("HCC"), which denied coverage in the underlying sexual harassment lawsuit.  In this action, Plaintiffs sued for breach of contract and breach of the implied covenant of good faith and fair dealing, claiming that HCC wrongfully denied coverage.  On cross-motions for summary judgment, the district court granted summary judgment for HCC.  Plaintiffs appeal.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review de novo the district court's grant of summary judgment.  *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038 (9th Cir. 2021).  The only relevant question is whether Plaintiffs' notice to HCC was timely.

The relevant insurance policy is a "claims-made-and-reported" policy covering "'discrimination', 'harassment' and 'inappropriate employment conduct' liability."[2]  *See Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 956–57 (9th Cir. 2002) ("[I]n a claims-made-and-reported policy, notice [to the insurer] is the event that actually triggers coverage.").  The policy provides that it "applies only if . . . a 'claim' because of an 'insured event' is first **made** against

---

[1] RestorCorp is an affiliate of AV Builder Corp., and they are treated as one entity by the parties.  Madureira is the President of both AV Builder Corp. and RestorCorp.  All are insureds.

[2] Because the 2017 and 2018 insurance policies are substantively identical, we do not distinguish between them in our analysis.

any insured . . . ; **and** . . . the 'claim' is first **reported** in accordance with [the timing sections of the policy]" (emphasis added).

The parties dispute whether Plaintiffs had thirty or sixty days from the time they learned of Dusina's "claim" to notify HCC. One policy provision states: "You must see to it that we or our authorized representative are notified within sixty (60) days or as soon as practicable after a 'claim' is made." Another provision states:

> You must see to it that we receive written notice of a "claim" as soon as practicable, but in no event later than sixty (60) days after your actual notice or receipt of the "claim," or thirty (30) days after the expiration, termination, or cancellation of the Policy or any Extended Reporting Period, whichever comes first.

The parties dispute whether these provisions create a contractual ambiguity as to the relevant notice period. Were there such an ambiguity, we would resolve it in Plaintiffs' favor. *See E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 389 (Cal. 2004) (noting that California courts require construing ambiguous terms in favor of the insured against the insurer).

We assume, without deciding, that the longer notice period controls, because even applying the sixty-day notice provision and construing the facts in the light most favorable to Plaintiffs, Plaintiffs' October 15, 2018 notification to HCC was untimely. The policy states that "'Claim' means a written demand received by the insured alleging damages **or** the filing of a 'suit' . . . ." (emphasis added).

3

Plaintiffs argue that they did not receive notice of Dusina's "claim" until September 13, 2018, when Plaintiffs' attorney received a draft of Dusina's complaint alleging employment discrimination and harassment. But both an August 1, 2018 email from Dusina and an August 14, 2018 email from Dusina's attorney included "written demand[s] received by the insured alleging damages." Thus, under the policy definition(s), Plaintiffs received "notice" of Dusina's claim by at least August 14, 2018, more than sixty days before their October 15, 2018 notification to HCC. Thus, Plaintiffs October 15, 2018 notice to HCC was untimely.[3]

Both the August 1, 2018 and August 14, 2018 communications made clear that Dusina's claim concerned an "insured event."[4] By at least August 14, 2018,

---

[3] This interpretation is consistent with California law. *See, e.g.*, *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1393 (2008) (letter threatening lawsuit absent some form of negotiated compensation constituted a written demand for damages and was therefore a claim); *Abifadel v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 160 (1992) ("[A] claim is a demand for something as a right or as due. A formal lawsuit is not required before a claim is found to have been made.").

[4] The policy defines "Insured Event" as including "actual or alleged acts of 'discrimination,' 'harassment,' and/or 'inappropriate employment conduct' by an Insured against an 'employee,' former 'employee,' or an applicant . . . ." More specifically, the policy defines "harassment" as including "physical conduct . . . implicitly made a condition of employment," and "inappropriate employment conduct" as including "actual or constructive termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment" or "an employment related incident resulting in . . . wrongful failure to employ or promote; . . . wrongful . . .

Madureira and his lawyer had been informed, in writing, that Dusina had been negotiating severance payments related to the contested end of her employment, that Dusina's negotiation emails referred to her sexual relationship with Madureira, that the proposed severance agreement would have released Dusina's Title VII claims, that Dusina was unhappy with the amount of money offered to release her "claims," and that she had hired her own lawyer to sue Madureira, AV Builder Corp., and RestorCorp.[5]  Because we agree with the district court that no reasonable juror could find that Plaintiffs did not have actual notice of a "claim" for "harassment" or "inappropriate employment conduct" by August 14, 2018, we affirm.[6]

**AFFIRMED.**

---

deprivation of career opportunity; . . . 'retaliation'; . . . employment terminations, disciplinary actions, demotions or other employment decisions which violate public policy . . . ."

[5] Also, during the negotiations between Madureira and Dusina, and prior to August 14, 2018, Madureira contacted his insurance broker to double the limits of his policy.

[6] We also take judicial notice that Plaintiffs filed a complaint against their former lawyer alleging that the lawyer was professionally negligent for failing to notify HCC of Dusina's claims in a timely manner.  *See Avilez v. Garland*, 69 F.4th 525, 527 n.3 (9th Cir. 2023) (stating that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011))).  Thus, HCC's unopposed motion for judicial notice (Dkt. No. 43) is **GRANTED**.